William D. SOMMERNESS, as Trustee for the Next of Kin and the Surviving Spouse of Thomas Michael Sommerness, Respondent,

v.

QUADNA RESORT SERVICES, individually and d.b.a. Chalet Bar and Loft Bar, Appellant,

Herb Stansberry, individually and d.b.a. Corner Club, Respondent,

and

QUADNA RESORT SERVICES, individually and d.b.a. Chalet Bar and Loft Bar, third party plaintiff, Appellant,

v.

SPORTSMAN'S BAR, third party defendant, Respondent.

No. C0-87-1186.

Court of Appeals of Minnesota.

Dec. 8, 1987.

Paul F. Schweiger, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, for Sommerness.

Louis R. Tilton, John H. Faricy, Pustorino, Pederson, Tilton & Parrington, Minneapolis, for Quadna Resort Services.

Richard Pearson, Walker, for Stansberry.

Peter Lind, Rolf E. Sonnesyn, Foster, Waldeck & Lind, Ltd., Minneapolis, for Sportsman's Bar.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

FORSBERG, Judge.

Respondent William D. Sommerness, as trustee for the next of kin and the surviving spouse of Thomas Michael Sommerness, brought this dram shop action against appellant Quadna Resort Services, individually and d.b.a. Chalet Bar and Loft Bar ("Quadna"), and respondent Herb Stansberry, individually and d.b.a. Corner Club ("Corner Club"). Quadna then attempted to implead respondent Sportsman's Bar ("Sportsman's") as a third party defendant, seeking to obtain contribution from Sportsman's in the event Quadna was found liable. Because the deceased Thomas Sommerness owned Sportsman's, the trial court granted Sportsman's motion for summary judgment and dismissed it from the action. We affirm.

## FACTS

Thomas Sommerness died in a one-car accident during the early morning of December 1, 1984, after consuming alcohol at Sportsman's, the Corner Club, and a bar at Quadna. Sommerness owned Sportsman's.

Ruling that a liquor vendor cannot get contribution from the alleged intoxicated person ("AIP") in a suit for loss of support by the AIP's family, the trial court granted partial summary judgment and dismissed Quadna's third party complaint against Sportsman's. Following the court's determination that there was no just reason for delay of entry of judgment, Quadna appeals.

## ISSUE

May a vendor in a dram shop action get contribution from a bar owned and operated by the AIP?

## ANALYSIS

The Dram Shop Act provides:

Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, or incurs other pecuniary loss by any intoxicated person, or by the intoxication of any person, has a right of

action, in his own name, against any person who, by illegally selling or bartering intoxicating liquors or non-intoxicating malt liquors, caused the intoxication of that person, for all damages sustained. * * * The provisions of section 604.01, as applied under this section, do not apply to actions for injury to person, property, or loss of means of support brought by a husband, wife, child, parent, guardian or other dependent of an intoxicated person.

Minn.Stat. § 340.95 (1984).

 Under this statute, the wife and children of an AIP may sue a liquor vendor for loss of support due to an injury to that spouse or parent. *Ascheman v. Village of Hancock*, 254 N.W.2d 382 (Minn.1977). However, the family may not sue the AIP himself in a direct action in negligence for loss of support. *Id.* at 384. Thus, in an action for loss of support, no common liability exists between the liquor vendor and the AIP since the family may only sue the vendor. *Id.*

 Common liability must be present for a vendor to obtain contribution from another party under the Civil Damage Act. *Id.* The *Ascheman* court examined the purposes of Minn.Stat. § 340.95 and found that the legislative intent behind the act was to suppress the illegal furnishing of liquor and to provide a remedy. *Id.* at 385 (citing *Ross v. Ross*, 294 Minn. 115, 200 N.W.2d 149 (1972)). To prevent frustration of the remedial purpose behind the act, the court reasoned that the AIP's negligence could not be considered since it would diminish the family's recovery. *Id.*

*Ascheman* thus affirms the requirement of common liability in actions founded upon the Dram Shop Act and prevents contribution from the AIP. *Ascheman* was reaffirmed in *Conde v. City of Spring Lake Park*, 290 N.W.2d 164 (Minn.1980). In *Conde*, the court held that the vendor may not implead the AIP for contribution, nor may the negligence of the AIP be imputed to the family.

This case presents a variation of *Ascheman* and *Conde*. In *Ascheman*, the AIP was simply a customer at a bar who was injured when the car he was driving was involved in a one-car accident. In *Conde*, the AIP was again a customer in a bar who was injured while walking home. In this case the AIP, Thomas Sommerness, was the owner of one of the bars at which he consumed alcohol, according to the unrebutted affidavit of Sportsman's attorney. As owner of Sportsman's, he was the party to be sued for any of its liabilities.

However, because Thomas Sommerness was also the AIP, and his negligence cannot be used to diminish the recovery of his family, he cannot be sued for contribution. A suit against Sportsman's is a suit against Thomas Sommerness. Because Thomas Sommerness may not be sued for contribution in an action for loss of support, Sportsman's is also not available for contribution.

## DECISION

The trial court correctly found that no common liability existed between Sportsman's and Quadna.

Affirmed.

LANSING, J., dissents.

LANSING, Judge (dissenting).

The majority's reliance on Thomas Sommerness' ownership of the Sportsman's Bar to defeat common liability requires closer scrutiny.

The purpose of the Civil Damages Act is both penal and remedial. *Conde v. City of Spring Lake Park*, 290 N.W.2d 164, 166 (Minn.1980); *Ascheman v. Village of Hancock*, 254 N.W.2d 382, 385 (Minn.1977); *Ross v. Ross*, 294 Minn. 115, 125, 200 N.W. 2d 149, 155 (1972). The penal aspect of the Act operates to induce the liquor industry to police itself. In the case of a sole proprietorship, where the liquor vendor can also be an intoxicated vendee, self-regulation can be imposed indirectly through the liquor vendor's insurer. The Act's remedial aspect assures that innocent persons can recover damages from commercial entities, which can bear losses by insuring against them as a cost of engaging in a hazardous business for profit. *Ross*, 294 Minn. at 125, 200 N.W.2d at 155. Because of the overriding remedial purpose of the Act, liquor dealers are strictly liable for all dam-

ages caused by the illegal sale of liquor. *Id.*

Although liability under the Act is based on strict liability rather than negligence, and the Act does not expressly provide for an action between liquor vendors, contribution has been allowed because it places the burden of loss on the entities that can prevent injury caused by alcohol consumption and broadens the financial base for recovery. *Skaja v. Andrews Hotel Company*, 281 Minn. 417, 422–23, 161 N.W.2d 657, 661 (1968).

Case law has not permitted an action for contribution from the alleged intoxicated person, on the grounds that (1) there is no common liability between an alleged intoxicated person and the liquor vendor; and (2) to allow contribution would diminish the support available to the family and frustrate the remedial purposes of the Civil Damages Act. *See Conde*, 290 N.W.2d at 166; *Ascheman*, 254 N.W.2d at 385.

Sportsman's Bar argues here that under *Conde* and *Ascheman* it cannot be sued for contribution because Sommerness was the owner of Sportsman's Bar, and therefore a suit against Sportsman's Bar would be a suit against Thomas Sommerness or his heirs. However, the finding of no common liability in those cases was based on the fact that an alleged intoxicated person's dependents could not bring a direct action against the alleged intoxicated person in negligence for loss of their means of support.

In this case Sommerness both provided support for his family and was a liquor vendor. The fact that his wife and children could not bring a direct negligence action against him for the loss of their means of support does not preclude a direct action against Sportsman's Bar under the strict liability provisions of the Civil Damages Act. Liability would be based on strict liability rather than negligence. *See Ross*, 200 N.W.2d at 154–55; *Dahl v. Northwestern National Bank of Minneapolis*, 265 Minn. 216, 220–21, 121 N.W.2d 321, 324 (1963). The Act imposes liability on all liquor vendors for damages caused by the illegal sale of liquor, regardless of the iden-

tity and fault of the victim. Sommerness' ownership interest, whatever its nature and extent, does not limit the reach of the Act, and it has not been shown that the legislature intended to exclude families of liquor vendors from the Act's protection.

The *Conde* and *Ascheman* courts were also concerned that contribution from the decedent-vendee would diminish the support available to the family and frustrate the remedial purposes of the Civil Damages Act. In this case, however, Quadna is presently involved in a bankruptcy action which may impede complete recovery. The insurance required by Sportsman's under Minn.Stat. § 340.11, subd. 21 (1984), may well enhance the family's potential for recovery, rather than diminish it. Sportsman's liability, at least to the limits of the required insurance, would arguably advance the remedial purposes of the Act.

Finally, Sportsman's Bar is also subject to liability under the penal aspects of Minn. Stat. § 340.12, which requires the filing of a bond by a liquor vendor to obtain a liquor license. Recovery is allowed under this section of the statute, not for the tortious wrong done to the plaintiff, but to penalize the dealer for illegally providing liquor to an intoxicated person. *See Robinson v. Lamott*, 289 N.W.2d 60, 65–66 (Minn.1979); *see also Dahl*, 265 Minn. at 220–21, 121 N.W.2d at 324 (noting the distinction between Minn.Stat. §§ 340.12 and 340.95).

While there may be no common liability on a negligence theory, I do not think that the holdings of *Conde* and *Ascheman* relieve Sportsman's Bar of the liability imposed by Minnesota statutes holding vendors strictly liable for the illegal sale of liquor.